UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

FILED

NOV 17 2009

DAVID CREWS, CLERK
By_____
Deputy

COURT FILE NO.: 3:09CV129-P-A

| | |
|---|---|
| Katina McMillian<br><br>      Plaintiff,<br>v.<br><br>DC Capital Services, Inc.; Gerald Stone; Joseph Thompson and Michael Sorrento;<br><br>      Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here and Defendants transact business here.

## PARTIES

4. Plaintiff Katina McMillian is a natural person who resides in the Montgomery County, Mississippi, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant DC Capital Services, Inc. (hereinafter "DC Capital") is a collection agency operating from an address of 268 Main Street, Suite 100, Buffalo, New York 14202, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6. Defendant Gerald Stone is an agent of Defendant DC Capital, who is believed to be a resident of Erie County, New York, and who can be served with process at the address of Defendant DC Capital.

7. Defendant Joseph Thompson is an agent of Defendant DC Capital, who is believed to be a resident of Erie County, New York, and who can be served with process at the address of Defendant DC Capital.

8. Defendant Michael Sorrento is an agent of Defendant DC Capital, who is believed to be a resident of Erie County, New York, and who can be served with process at the address of Defendant DC Capital.

## FACTUAL ALLEGATIONS

9. On or about December 2006, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a payday loan from Upfront Payday.

10. Sometime thereafter, the above-referenced debt was consigned, placed or otherwise transferred to DC Capital for collection from this Plaintiff.

11. On October 12, 2009, DC Capital and/or its agents began calling Plaintiff on her home telephone and her cellular telephone attempting to collect the above-referenced debt.

12. All phone calls made to Plaintiff by Defendants and other collection employees of DC Capital were "communications" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

13. On October 12, 2009, an agent of DC Capital, who identified himself as Mr. Garcia, called Plaintiff's home and cellular telephones and left messages asking that Plaintiff call him back at telephone number (716) 332-1819.

14. Plaintiff returned Mr. Garcia's phone call. Mr. Garcia told Plaintiff that DC Capital would file suit against Plaintiff if she did not immediately make payment arrangements.

15. Later on the same day, Plaintiff again called DC Capital. Plaintiff was connected to Gerald Stone, who identified himself as an "Investigating Supervisor." Mr. Stone told Plaintiff that she had forty-five minutes to call him back and make a payment or he was going to "refer the matter to the authorities in Shelby County, Tennessee." Mr. Stone further stated that he had "the papers on his desk" and told Plaintiff to immediately borrow money wherever she could if she wanted to avoid having the court "issue a bench warrant for her arrest" because she had "committed a felony."

16. During the same phone call, Mr. Stone transferred Plaintiff to another employee of Defendant, Ms. Rich. Ms. Rich gave Plaintiff the address where Plaintiff was to send her payments.

17. Between October 12th and October 20th, Defendants left numerous voicemails for Plaintiff, demanding Plaintiff call DC Capital to make immediate payment arrangements.

18. On October 21, 2009, an agent of DC Capital, who identified himself as "Investigator Joseph Thompson," called and left a voicemail message on Plaintiff's home telephone. Mr. Thompson's message was menacing in tone and threatened prosecution if payments were not immediately made.

19. Between October 21, 2009, and November 3, 2009, DC Capital's agents have called Plaintiff on several occasions demanding payment from Plaintiff and threatening dire consequences if she failed to make such payment.

20. On November 3, 2009, Plaintiff called DC Capital and spoke to Ms. Rich, who to Plaintiff that Defendant was "holding" the account and had not transmitted it to the authorities in order to give Plaintiff an opportunity to pay off the debt rather than face criminal charges.

21. When Plaintiff informed Ms. Rich she was unable to pay the amount demanded, Plaintiff was transferred to another agent of DC Capital who identified himself as "Investigator William Turner" in the "Investigation Unit". Mr. Turner stated that Defendant was going to "get the Shelby County District Attorney and get a sheriff out there to arrest you for some bad checks you wrote." Mr. Turner told Plaintiff that he had been instructed to have her "put into custody" and that she would be charged with "a Class E felony." Mr. Turner further stated that Plaintiff would be arrested and that "these people mean business, they want to prosecute you because it's just like theft."

22. Later on November 3, 2009, Plaintiff again called DC Capital and spoke to Ms. Rich, who confirmed that Plaintiff would be subject to arrest and further stated that Defendant was not a collection agency but was a law firm. Ms. Rich also threatened Plaintiff with the seizure of her property and wage garnishment.

23. Plaintiff was then transferred to another agent of DC Capital, who identified himself as Mr. Michael Sorrento. Mr. Sorrento said he was the "Director of Arbitration" and said that was the person who "oversaw the legal department".

24. Mr. Sorrento said that the Plaintiff faced "civil and criminal charges" and that "anything over $500.00 is a felony in the state of Tennessee."

25. Mr. Sorrento told Plaintiff that he would file the charges with the District Attorney and have a summons served on Plaintiff.

26. Mr. Sorrento represented that the only way for Plaintiff to avoid criminal prosecution was to pay $760.00 in "restitution" and that, if Plaintiff paid this amount, DC Capital would provide her with a "full release" of all potential charges.

## RESPONDEAT SUPERIOR LIABILITY

27. The acts and omissions of Defendants Gerald Stone, Joseph Thompson and Michael Sorrento and the other debt collectors employed as agents by Defendant DC Capital who communicated with Plaintiff as more particularly described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant DC Capital.

28. The acts and omissions by Defendants Gerald Stone, Joseph Thompson and Michael Sorrento and the other debt collectors mentioned herein were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant DC Capital in collecting consumer debts.

29. By committing these acts and omissions against Plaintiff, Defendants Gerald Stone, Joseph Thompson and Michael Sorrento and the other debt collectors mentioned herein were motivated to benefit their principal, Defendant DC Capital.

30. Defendant DC Capital is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees, including but not

limited to violations of the FDCPA, in their attempts to collect this debt from Plaintiff.

## SUMMARY

31. The above-described collection communications made to Plaintiff by Defendants and other employees of DC Capital were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692f, amongst others.

32. The above-detailed conduct by these Defendants of harassing and threatening Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA.

33. This series of abusive collection calls by Defendants has caused Plaintiff to become frightened, depressed and agitated.

34. Defendants' illegal, abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff and have caused her to fear that she would be arrested or imprisoned if she did not comply with Defendants' demands, however unreasonable or unmerited.

35. Plaintiff has suffered actual damages as a result of these illegal collection communications by Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions.

## TRIAL BY JURY

36. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. US Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

37. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

38. The foregoing acts and omissions of Defendants and/or their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to the Plaintiff.

39. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for the Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for the Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for the Plaintiff;

- for such other and further relief as may be just and proper.

Dated: November 10, 2009

Respectfully submitted,

**DEAS & DEAS, LLC**

By: **/s/W. Lawrence Deas**
W. Lawrence Deas, Esq.
MS Bar No. 100227
P.O. Box 7282
Tupelo, MS 38802
Telephone: (662)842-4546
Facsimile: (662)842-5449
*LDeas@AOL.com*


By: **/s/Harry H. Sumner**
Harry H. Sumner, Esq.
MS Bar No. 10784
P.O. Box 824
347 North Spring Street
Tupelo, MS 38802
(662) 620-2556 phone
(662) 620-0665 facsimile
***hhs@hhslaw.net***

**Attorneys for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MISSISSIPPI )
)
COUNTY OF MONTGOMERY )

Plaintiff Katina McMillian, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_Katina McMillian_
KATINA MCMILLIAN

Subscribed and sworn to before me
this _10th_ day of November, 2009.

_Notary Public_

My Commission Expires Jan. 1, 2012

